UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BENJAMIN A BOSTICK, | } | |
| | } | |
| Petitioner, | } | |
| VS. | } | CIVIL ACTION NO. H-06-4065 |
| | } | |
| NATHANIEL QUARTERMAN, | } | |
| | } | |
| Respondent. | } | |

OPINION ON DISMISSAL

Petitioner Benjamin A. Bostick, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed through counsel, a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony conviction for aggravated robbery  (Docket Entry No.1).  Respondent has filed a motion for summary judgment, seeking dismissal of the petition on the ground that petitioner failed to meet his burden of proof under 28 U.S.C. § 2254(d).  (Docket Entry No.9).  Petitioner has not filed a response to the motion.  After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

I. BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed:  On September 8, 2002, complainant Henry Fillion reported that his Rolex watch was stolen at gunpoint by an unknown assailant, who left the crime scene in a sports utility vehicle driven by a black male.  *Bostick v. State*, No.14-03-01292-CR, Supplemental Clerk's Record, Pre-Sentence Investigation at 4.  On November 13, 2002, Washington was taken into custody, where he was identified in a line-up by Clarence Eriksen as the man who stole his Rolex watch.  *Bostick,* Motion for New Trial, Exhibit 3;

*Bostick,* Supplemental Clerk's Record, Pre-Sentence Investigation at 6.   While in custody, Washington advised police that petitioner was also involved in some of the robberies under investigation and the officers assembled a photo array containing petitioner's photograph. *Bostick*, Supplemental Clerk's Record, Pre-Sentence Investigation at 4.  On November 14, 2002, Washington was charged with the aggravated robbery of Clarence Eriksen.  *Bostick,* Motion for New Trial, Exhibit 3; *Bostick,* Supplemental Clerk's Record, Pre-Sentence Investigation at 6. Washington hired his former attorney, Doug O'Brien to represent him.  *Bostick,* Motion for New Trial, Exhibit 1.

After Washington's arrest, petitioner was pressured by Washington's friends to confess to the Fillion and Eriksen robberies because Washington was a habitual offender and his parole would be revoked if convicted.  *Bostick*, Motion for New Trial, Exhibit 24.  Washington's friends told petitioner that if he said he committed the offenses he would get probation and Washington would be set free.  *Id.*  Washington and his friends also pressured petitioner to meet with Attorney O'Brien.  *Id.*  Petitioner contacted O'Brien concerning a robbery investigation, in which he had been asked to appear in a line-up.  *Id.* Motion for New Trial, Exhibit 1.  O'Brien advised petitioner to seek different counsel because "it would not be in either his or Mr. Washington's best interest to have the same counsel representing them during a pending investigation." *Id.*

Petitioner did not employ new counsel.  *Id.* Motion for New Trial, Exhibits 1, 24. On December 2, 2002, one of Washington's friends forced petitioner to go to O'Brien's office to execute a confession admitting to the aggravated robberies.  *Id*, Exhibits 1, 23.  Petitioner wrote out a statement on a legal pad.  *Id.* Exhibit 1.  O'Brien discussed with petitioner that he might be charged with the robbery that was under investigation.  *Id.*

On December 5, 2002, Fillion identified petitioner from the photo array as the man who robbed him. *Bostick*, Supplemental Clerk's Record, Pre-Sentence Investigation Addendum at 5. Fillion did not identify Washington from the line-up or the photo array. *Id.* On December 6, 2002, a complaint issued for petitioner charging him with the aggravated robbery of Fillion in cause number 932618. *Bostick*, Clerk's Record at 2. On December 9, 2002, petitioner "tendered a handwritten statement to the District Attorney's Office in which he admitted committing" the Eriksen aggravated robbery. *Bostick*, Supplemental Clerk's Record, Pre-Sentence Investigation Addendum at 26-29. He was not arrested at that time. *Bostick*, Clerk's Record at 124.

At some point petitioner was arrested on a charge of aggravated robbery in the Fillion case because on December 14, 2002, he was released on a $30,000.00 bond. *Bostick*, Supplemental Clerk's Record, Pre-Sentence Investigation Addendum at 5. Sometime thereafter, petitioner contacted O'Brien about representing him in the Fillion aggravated robbery case. *Bostick*, Motion for New Trial, Exhibit 1. On January 3, 2003, petitioner appeared in state district court with O'Brien on the Fillion aggravated robbery charge. *Bostick*, Clerk's Record at 4. Petitioner was indicted on January 21, 2003, for the Fillion aggravated robbery. *Id.* at 5.

On February 4, 2003, the District Attorney dismissed the Eriksen aggravated robbery charge against Washington. *Bostick*, Supplemental Clerk's Record, Pre-Sentence Investigation Addendum at 26. Per discussions with the district attorney's office, petitioner was not prosecuted for the Eriksen aggravated robbery even though he confessed to it. *Bostick*, Motion for New Trial, Exhibit 1. Petitioner was subpoenaed to testify at Washington's parole revocation hearing. At the hearing on March 6, 2003, petitioner admitted that he committed the Eriksen aggravated robbery. *Bostick*, Motion for New Trial, Exhibit 19. Complainant Eriksen,

who also testified at the hearing, was unable to identify Washington as the robber at the hearing. *Id.* Washington's parole was reinstated and he was released from custody. *Id.*, Exhibit 1.

O'Brien and petitioner discussed petitioner's options with respect to the Fillion aggravated robbery case. *Id.* Petitioner indicated that he wanted to enter a plea of guilty to the Court and have the state district judge assess punishment. *Id.* O'Brien and petitioner also discussed the plea offers of twenty-five years and twenty years. *Id.* O'Brien advised petitioner that had the State offered fifteen years, he might want to accept the offer. *Id.* After fully discussing the options, petitioner elected to enter a plea of guilty and have a pre-sentence investigation conducted. *Id.* The state district judge indicated that deferred adjudication would be considered. *Id.*

Sometime before the punishment hearing, O'Brien informed petitioner that he needed to make arrangements to pay for O'Brien's legal services and that if petitioner could not pay, then he should talk with Washington. *Bostick*, Motion for New Trial, Exhibit 24. At the punishment hearing, the Court was presented with letters from family members and friends. *Id.*, Exhibit 1. Many of those who wrote such letters were present in the courtroom. *Id.* They were not called to testify. *Id.*

On April 28, 2003, petitioner entered a plea of guilty to the Fillion aggravated robbery without an agreed recommendation. *Bostick*, Clerk's Record at 9. On July 15, 2003, the 184th Criminal District Court of Harris County, Texas assessed punishment at eighteen years confinement in TDCJ-CID. *Id.* at 20. Petitioner sought a new trial on the ground that his retained counsel had a conflict of interest in violation of the Sixth Amendment. *Id.* at 23. After a hearing, the state district court denied the motion. *Bostick*, Motion for New Trial at 21.

On appeal, petitioner challenged his conviction on the same conflict-of-interest ground as in his motion for new trial.  *Bostick v. State*, No.14-03-01292-CR, 2005 WL 1370013, (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  In an unpublished Memorandum Opinion, the Fourteenth Court of Appeals for the State of Texas found that "[t]he evidence adduced at the motion-for-new-trial hearing does not support a finding of actual conflict of interest that affected counsel's performance," and affirmed the state district court's judgment.  *Id.* at *4.  The Texas Court of Criminal Appeals refused his petition for discretionary review on January 18, 2006.

Petitioner sought collateral relief in state court through counsel on the following grounds:

1.    Petitioner's "plea of guilty was involuntary based on the advice given by trial counsel to sign a confession prior to being charged, to testify at a parole revocation hearing for Harlen Washington and waive his right to trial by jury and conflict free representation by entering a plea of guilty to a presentence investigation"; and,

2.    Petitioner "was denied his right to effective assistance of counsel by his trial counsel having a conflict of interest by representing Harlem Washington."

*Ex parte Bostick*, Application No.65,963-01, pages 5-6, 12 (Tex. Crim. App. 2006).  The state district court sitting as a habeas court entered Findings of Fact, Conclusions of Law on August 21, 2006, and recommended that relief be denied.  *Id.* at 40.  The Court of Criminal Appeals denied his state habeas application on October 25, 2006, without written order on the findings of the trial court without a hearing.  *Id.* at cover.

Petitioner's counsel filed the pending habeas petition on December 22, 2006, seeking federal habeas relief on the same grounds raised in his state habeas application.  (Docket Entry No.1).  Respondent moves for summary judgment on grounds that petitioner's "claims are conclusory, contradict the findings of the state courts which are entitled to a presumption of

correctness, and lack merit, and because he has not demonstrated that the state courts' determination was unreasonable, he has failed to demonstrate that he is entitled to federal habeas relief."  (Docket Entry No.9).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a petition for discretionary review and a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the trial court's findings without a hearing. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in the petition for discretionary review and state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a

mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and

convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

III. ANALYSIS

A. Involuntary Plea

Petitioner claims his plea of guilty was involuntary because he relied on the advice of counsel to sign a confession prior to being charged, to testify at a parole revocation hearing for his friend, Harlan Washington, and to waive his right to a jury trial and to conflict-free representation by entering a plea of guilty to a presentence investigation. (Docket Entry No.1).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. When a convicted defendant seeks habeas corpus relief on the ground of ineffective assistance of counsel, he must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-91, 694 (1984). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

To satisfy the second or "prejudice" prong of the *Strickland* test in the context of a guilty plea a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, (1985); *accord Craker v. McCotter*, 805 F.2d 538, 541 (5th Cir. 1986). Therefore, in the context of a guilty plea, a petitioner alleging ineffective assistance of counsel may attack counsel's performance only as it relates to the voluntariness of his guilty

plea.  *Tollett v. Henderson*, 411 U.S. 258, 266 (1973); *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).  It is not sufficient for a habeas petitioner to merely allege deficiencies on the part of counsel.  He must affirmatively plead the resulting prejudice in his habeas petition.  *Hill*, 474 U.S. at 59-61; *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  A court reviewing an ineffectiveness claim need not consider the two inquires under *Strickland* in any particular order since a failure to establish either requirement necessarily defeats the claim.  *Strickland*, 466 U.S. at 697.

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats, misrepresentation, or improper promises having no relationship to the prosecutor's business, such as bribes.  *Brady v. United States*, 397 U.S. 742, 755 (1970).  Although inadequate representation by an attorney may render a guilty plea involuntary and thus a nullity, *see Colson v. Smith*, 438 F.2d 1075 (5th Cir. 1971), the state habeas court's findings and the habeas records do not indicate that such ineffective representation was afforded to petitioner in this case.

The state district court sitting in habeas considered the trial record and the affidavits of both petitioner and Attorney O'Brien, which had been given at the hearing on petitioner's motion for new trial.  The state habeas court found that the facts asserted in Doug O'Brien's affidavit were true and that his affidavit was credible.  *Ex parte Bostick*, Application No.65,963-01 at 40.  The state habeas court also found petitioner's claims that his plea was involuntary as a result of trial counsel's advice and that trial counsel assured him that he would receive probation to be unpersuasive.  *Id.* at 40-41.  Based on O'Brien's affidavit and state district court records, the state habeas court found that petitioner "pled guilty after fully discussing and considering all options available."  *Id.* at 40.  The state habeas court concluded that petitioner failed to overcome the presumption of voluntariness of his plea created by the trial court records and to show that his counsel's advice regarding his plea was unreasonable or that it rendered his plea involuntary.  *Id.* at 41.  The state habeas court further concluded that petitioner failed to show that "but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different."  *Id.*

Plea documents in this case show a voluntary and knowing plea.  *See Blackledge v. Alliso*n, 431 U.S. 63, 74 (1977) (noting that appellant faces heavy burden in proving that are entitled to relief because testimony in open court carries a strong presumption of verity).  In his Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession, petitioner confessed to the charges and indicated his intent to enter a guilty plea without an agreed recommendation.  *Bostick*, No.14-03-01292-CR, Clerk's Record at 9-11.  In the written plea Admonishments petitioner noted that he was charged with aggravated robbery and the range of punishment for such conviction was 5 to 99 years confinement.  *Id.* at 12.  In his Statement and Waivers of Defendant, petitioner indicated that he was mentally competent and understood the

nature of the charges against him and the admonishments.  *Id.* at 13-15.  Petitioner agreed that he was proficient in the English language, that his attorney had fully discussed with him the plea papers and the consequences of entering a guilty plea.  *Id.*  He further stated that he understood the admonishments in the plea papers and was aware of the consequences of his plea, which he made freely and voluntarily.  *Id.*  Petitioner swore to the veracity of these admonishments and signed the document.  His trial counsel, the assistant district attorney, and the state district judge also signed the document.  *Id.* at 15.

O'Brien's affidavit also reflects that petitioner entered a knowing and voluntary plea.  O'Brien attested that he and petitioner fully discussed petitioner's options and the State's plea offers.  *Bostick*, Motion for New Trial, Exhibit 1.  He further attested that petitioner indicated his desire to enter a guilty plea and have the state district judge assess punishment after a pre-sentence investigation.  *Id.*  Petitioner's affidavit is silent with respect to his decision to enter a guilty plea.  *Id.*, Exhibit 24.  Moreover, the record does not affirmatively show that O'Brien advised petitioner to sign a confession to the Fillion aggravated robbery, to testify at Washington's parole revocation hearing, to waive his right to a jury trial, or to enter a plea of guilty to a presentence investigation.

In this case, the state habeas court's findings that petitioner's plea was voluntary and knowing, and that petitioner's trial counsel afforded petitioner constitutionally adequate representation are not unreasonable applications of federal law.  Accordingly, respondent is entitled to summary judgment on this ground.

B. Conflict of Interest

Petitioner contends that he was denied his constitutional right to effective assistance of counsel because O'Brien labored under a conflict of interest by his representation

of Washington.  (Docket Entry No.1).  Respondent maintains that petitioner waived the conflict of interest and alternatively, that O'Brien did not labor under an actual conflict of interest in his representation of petitioner and Washington.  (Docket Entry No.9).

"Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).  A party who raises no objection at trial may obtain habeas corpus relief by demonstrating that his counsel represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.  *Cuyler v. Sullivan,* 446 U.S. 335, 345-46 (1980).  Although no prejudice need be shown if an actual conflict of interest is found to exist, the petitioner must demonstrate that the conflict is actual, not speculative.  *Id.* at 348.

Multiple representation does not necessarily create an actual conflict of interest. *See United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006).  An actual conflict of interest is a division of loyalties that affects the adequacy of counsel's representation "as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 & n.5 (2002) (quoting *Wood*, 450 U.S. at  273; *Cuyler*, 446 U.S. at 349-50; *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)).  A conflict exists when counsel is "compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."  *Garcia-Jasso*, 472 F.3d at 243 (internal quotation marks omitted).  "Thus, there is an actual conflict when the attorney knows that his clients' interests diverge and must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty."  *U.S. v. Culverhouse*, 507 F.3d 888, 893 (5th Cir. 2007).

Petitioner alleges that the following facts establish an actual conflict of interest: Attorney O'Brien was hired by his former client Harlan Washington, a parolee, to represent him on a charge of aggravated robbery and before the Texas Parole Board.  (Docket Entry No.1).  At Washington's request, petitioner went to O'Brien's office and O'Brien arranged for petitioner to give a statement to the police exonerating Washington, even though Washington was identified by at least one complainant.  (*Id.*).  O'Brien also represented petitioner on a charge of aggravated robbery apart from Washington's charge.  (*Id.*).  During this representation, O'Brien caused petitioner to be subpoenaed to appear at Washington's parole revocation hearing to testify that he committed the robbery for which Washington had been charged.  On March 6, 2003, O'Brien appeared with petitioner in the 184th Criminal District Court of Harris County on the aggravated robbery charge and then appeared with Washington at a parole revocation hearing where he cross-examined petitioner in an attempt to obtain Washington's freedom.  Washington's parole was reinstated.  (*Id.*).

O'Brien advised petitioner to enter a guilty plea to the aggravated robbery charge and attempted to cause him to waive his right to appeal.  (*Id.*).  O'Brien presented no witnesses on petitioner's behalf at the sentencing hearing even though the State presented testimony from two complainants in two different robberies.  (*Id.*).  Washington was sentenced to eighteen years in prison even though he had no criminal record.  (*Id.*).  Washington paid O'Brien; petitioner did not.  O'Brien told petitioner to talk to Washington about getting him his fee.  (*Id.*).

In considering the conflict-of-interest claim on direct appeal, the Fourteenth Court of Appeals for the State of Texas ("Fourteenth Court of Appeals") reviewed the state district court's denial of petitioner's Motion for New Trial and the evidence adduced at the hearing on the motion.  *Bostick*, 2005 WL 1370013 at *4.  The Fourteenth Court of Appeals applied the

*Cuyler* standard to petitioner's claim. *Id.* at *3. Citing *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997), the Fourteenth Court of Appeals noted that "[a]n actual conflict of interest exists only if counsel is required to make a choice between advancing his client's interest, or advancing other interests to the detriment of his client's interest." *Id.* After a thorough review of the affidavits of both petitioner and O'Brien, the Fourteenth Court of Appeals found "the evidence adduced at the hearing did not support a finding of actual conflict of interest that affected counsel's performance." *Id.* at *4. The Fourteenth Court of Appeals concluded that

> Appellant presented evidence that Washington and Washington's friends pressured appellant to confess to the robbery of Eriksen. Appellant has not presented evidence that the pressure was initiated by O'Brien. The trial court did not abuse its discretion in impliedly determining that O'Brien was not burdened with an actual conflict of interest. The evidence does not show O'Brien was forced to choose between advancing appellant's interest in a fair trial and advancing other interests to appellant's detriment. Furthermore, appellant has not presented any evidence that his guilty plea in this case was rendered involuntary by any alleged conflict of interest.

*Id.* The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on this ground. *See Bostick*, Appellant's Petition for Discretionary Review No.1204-05.

The state habeas court also found based on O'Brien's affidavit that "O'Brien fully discussed with applicant the actual and potential problems of joint representation and conflict of interest and applicant stated he fully understood and affirmatively waived the conflict." *Ex parte Bostick*, Application No.65,963-01 at 41. The state habeas court declined to reach the issue of whether petitioner had been denied the effective assistance of counsel due to a conflict of interest because the issue had been raised on appeal and rejected by the Fourteenth Court of Appeals. Alternatively, the state habeas court concluded that petitioner had failed to allege sufficient facts, which if true, would should that his trial counsel had an actual conflict of interest or that such

alleged conflict had an adverse effect on counsel's performance.  *Id.* at 41-42.  The state habeas court found that petitioner had been afforded sufficient representation to protect his right to reasonably effective assistance of counsel in the primary case.  *Id.* at 42.  The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the trial court's findings without a hearing.  *Id.* at cover.

The record affirmatively supports the findings of the state courts.  The record shows that petitioner initiated contact with O'Brien with the intent to exonerate Washington and that petitioner confessed to both offenses with knowledge of the consequences of such confession.  *Bostick*, Motion for New Trial Hearing, Exhibits 1, 24.  Although petitioner attests that he confessed to both offenses under duress from Washington' friends, he does not attest, and the record does not show, that O'Brien was aware of such coercion or that O'Brien pressured petitioner in any way.  *Id.*  The record shows that petitioner requested O'Brien's assistance in giving a written statement to the District Attorney's Office, that O'Brien appeared with petitioner at the District Attorney's office to give such statement, and that O'Brien participated in discussions with the District Attorney's office that resulted in a decision not to prosecute petitioner for the Eriksen offense.  *Id.*, Exhibit 1.  At the time petitioner testified at Washington's parole hearing, the charges against Washington had been dismissed; the charge against petitioner for the Fillion aggravated robbery case was still pending.  *Bostic*k, Supplemental Clerk's Record, Pre-Sentence Investigation Addendum.   O'Brien had petitioner subpoenaed to testify at Washington's parole revocation hearing and allowed him to confess at the hearing to the Eriksen robbery and to acknowledge that he faced charges on an unrelated case; O'Brien, however, refused to allow petitioner to discuss why he would rob anyone or to discuss the unrelated case. *Bostick*, Motion for New Trial, Exhibit 19.

Petitioner alleges that O'Brien did not zealously represent him in the Fillion case to the degree that O'Brien represented Washington in the Eriksen case because petitioner did not pay his legal fees and Washington did. (Docket Entry No.1). The record, however, does not support such allegation. The record shows that O'Brien fully discussed with petitioner his options regarding a plea in the Fillion aggravated robbery case. *Bostick*, Motion for New Trial, Exhibit 1. Petitioner chose to enter a guilty plea and to be sentenced by the state district judge, who had indicated that she would consider deferred adjudication. *Id.* Although O'Brien presented no witnesses on petitioner's behalf at the sentencing hearing, the statements of most of the witnesses who were present at the hearing were before the state district court in the pre-sentence investigation report. *Id.* The state district court assessed punishment without an agreed recommendation. *Id.*

Based on this record, the Court finds that the state courts' finding that petitioner was not been denied the effective assistance of counsel due to a conflict of interest is not an unreasonable application of federal law. Accordingly, respondent is entitled to summary judgment on this ground.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding and appellate courts, the Court ORDERS the following:

1.  Respondent's motion for summary judgment (Docket Entry No.9) is GRANTED.

2.  Petitioner's petition for federal habeas relief is DENIED.

3.  A certificate of appealability is DENIED.

4.  This habeas action is DISMISSED with prejudice.

5.  All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 25th day of January, 2008.

MELINDA HARMON